15007

PORT UTILITIES COMMISSION OF CHARLESTON v. CHICCO
SAME v. CHICCO *ET AL.*

(7 S. E. (2d), 69)

400

November,  1938.

*Mr. J. C. Long,* for appellant,

*Messrs. Legge & Gibbs,* for respondent,

January 30, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

January 25, 1929, the Port Utilities Commission of Charleston, S. C., and Marine Oil Company of the same city, entered into a written agreement by which the Port Utilities Commission leased to Marine Oil Company, certain municipally owned property of the city, known as North Adger's Wharf and South Adger's Wharf, and the slip or dock to the south thereof. The lease ran for five years, from October 1, 1928, and the monthly rent was $401.67. From October 1, 1928, to August 31, 1932, Marine Oil Company occupied the property and paid the annual rental as agreed upon by the terms of the written agreement of lease. It did not pay the rent for the months of September, October, November, and December, 1932, but it remained

in possession of the leased premises. The Port Utilities Commission instituted in the Civil and Criminal Court of the City of Charleston, a proceeding in ejection, which culminated in an order of ejection of date February 23, 1933. From this judgment Marine Oil Company appealed to the Court of Common Pleas for Charleston County. In order to retain possession of the leased premises pending the hearing of the appeal, Marine Oil Company gave bond, as required by the statute, in the sum of $1,200.00, with Vincent Chicco as surety. The condition of the bond was that Marine Oil Company would pay all damages which the Port Utilities Commission might sustain if the Marine Oil Company should fail in this appeal.

The judgment of the Civil and Criminal Court was affirmed by the judgment of the Court of Common Pleas, by judgment filed May 24, 1933.

The Marine Oil Company continued to retain possession of the leased premises and appealed to the Supreme Court from the judgment of the Court of Common Pleas, and in accordance with law gave bond in the sum of $2,500.00, with Vincent Chicco and Amelia A. Long as sureties. The condition of the bond was that Marine Oil Company would pay to the Port Utilities Commission the value of the use and occupation of the premises from the date of the bond (May 30, 1933), until the property was surrendered, if the Marine Oil Company should fail in the appeal.

The judgment of the Court of Common Pleas was affirmed in an opinion handed down September 19, 1934, *Port Utilities Commission of Charleston v. Marine Oil Co.,* 173 S. C., 346, 175 S. E., 818; the Marine Oil Company surrendered the premises September 30, 1933.

After demand and refusal for the payment of the damages alleged to have been suffered by reason of the appeals, these two actions were instituted.

In that in which Vincent Chicco is sole surety, it is alleged that plaintiff was deprived of the possession of the property during the pendency of the appeal from the Civil

and Criminal Court to the Court of Common Pleas, from February 27, 1933, to May 24, 1933, a period of three months, and was thereby damaged in the sum of $1,204.91, the value of the use and occupation of the premises for three months, and was further damaged in the sum of $12-.50, being the costs and disbursements taxed against the appellant.

In the case in which Vincent Chicco and Amelia A. Long are the sureties, it is alleged that plaintiff was deprived of the possession of the leased premises from the 30th day of May, 1933, to the 30th day of September, 1933, a period of four months, and was thereby damaged in the sum of $1,606.68, the rental value of the premises for four months, and to the extent of $108.80, being the costs and disbursements taxed against the appellant.

In the one case judgment is asked for $1,200.00 and interest, and for the aforesaid costs and disbursements.

In the other case judgment is asked for $1,715.48 and interest, costs and disbursements.

The appeals were heard together.

The plaintiff contends that the value of the use and occupancy of the leased premises from October 1, 1928, to September 30, 1933, is $401.67 per month, as shown by the terms of the lease. The appellant holds that the measure of damages is the true rental value of the premises for the period covered by the bonds. The Circuit Judge sustained the contention of the appellant thereabout.

In the *Vincent Chicco case,* the jury found for plaintiff in the sum of $209.00.

In the case of *Vincent Chicco and Amelia A. Long* they found for plaintiff in the sum of $370.80.

On motion of plaintiff's counsel, and after mature consideration, the trial Judge granted a new trial on the ground that the verdicts were inadequate and against the weight of evidence.

The appeal is from that order and but a single question is presented: Was it an abuse of discretion on the part of the

Circuit Judge to grant the motion for new trial on the ground that the verdict was grossly inadequate and against the weight of the evidence?

That the trial Judge may grant such motion is not open to argument. In the case of *Wood v. Atlanta & Charlotte Air-Line Ry. Co.,* 19 S. C., 5,79, Judge Pressley held that he had no power to entertain such motion. On appeal the Supreme Court said: " * * * This power, without restriction, has been lodged by the law in the Circuit Judge, and this Court has declared that it is error of law in him to decline to exercise it on the ground that he has not the right to do so. *Steele v. Railroad Co.* (11 S. C., 589, 591), *supra*. It is not only the right of the Circuit Judge, but his exclusive right. Neither the Supreme Court nor any other tribunal in the State possesses the power, and if he refuses to exercise it promptly on all proper occasions, this very important means of securing justice will be entirely lost. The law expressly makes it the duty of the Circuit Judge to grant new trials 'in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the Courts of law of this State.' "

That the Courts of law of this State have granted new trials in cases in which the juries have rendered verdicts which the Judges, in the exercise of a sound discretion have deemed to be excessive or inadequate, as the case may be, is admitted by appellant. Counsel for appellant does not controvert this statement of the rule, but he contends that the trial Judge abused his discretion, which, as he says in his brief, "is nothing more than asking did he commit an error of law in granting the motion for new trial." Counsel also frankly admits that the burden is on the appellant to show that his Honor committed an error of law in granting the motion for new trial.

There were two actions involved in this appeal, one on the bond for $1,200.00, upon which Vincent Chicco was the sole surety. Attached in the liability in this action was an item of $12.50 costs.

The other action was on the bond for $2,500.00, upon which Vincent Chicco and Amelia A. Long were sureties. Attached to the liability in this case was an item of $108.80 —the costs taxed in this action.

In the case against Chicco alone, the jury found for the plaintiff $209.00, which included the item of costs of $12-.50; $196.50 was for the use and occupancy of the leased property from February 27, 1933, to May 24, 1933, a period of three months. It appears, then, that the jury fixed the rental value of the property at $65.50 per month.

In the case against Vincent Chicco and Amelia A. Long, the jury found for plaintiff in the sum of $370.80, of which $108.80 was the costs in one phase of the ejectment proceedings. It appears then that $262.00 represents the jury's idea of the rental value of the leased premises for a period of four months, from May 30, 1933, to September 30, 1933, or $65.50 per month.

The plaintiff had but one witness as to the rental value of the said premises, Mr. John D. Rooney, who testified that in his opinion the fair rental value of the property during the period covered by the bonds sued on was $401.67 per month, and that he based his opinion on the fact that that was the very amount which the parties had agreed in the lease was the fair rental value.

The defendants introduced but one witness, the president of the Marine Oil Company, the tenant under the lease, who executed the lease on behalf of the Marine Oil Company. A synopsis of his testimony is that the Standard Oil Company had built a wharf just north of the property leased by Marine Oil Company from the Port Utilities Commission and, as a consequence, the business of the Marine Oil Company had dropped off fifty per cent., and hence he did not want it (the leased property) at any price. He testified that before the expiration of the lease on the Adger wharf property he had negotiated and arranged for a lease on the Standard Oil Company property at a rental of $50.00 per

month; that the Standard Oil wharf was superior to the Adger wharf. On cross examination he testified that for four years of the lease period the Marine Oil Company had paid the rent at the rate stated in the lease, but under protest because they had not got the depth of six feet of water in the slip. When the lease expired September 30, 1933, the Marine Oil Company offered to lease the same property from the Port Utilities Commission at a rental of $241.00 per month for a period of one year, with the privilege of renewal for one year. The proposal was based on certain conditions. The proposal, or offer, was never accepted.

On re-direct examination he said that his offer of $241.00 was made on condition that he could connect that property with the Standard Oil wharf property. On October 18, 1932, when the Marine Oil Company had been in arrears of rent for less than two months, he wrote Mr. Rooney, the general manager of Port Utilities Commission, asking for a reduction of rent from $401.67 to $201.67, on the ground that the Marine Oil Company had been losing money, partly because of the falling off of the yachting business and partly because of the building of the Standard Oil Company wharf. It appears that despite these conditions the Marine Oil Company was willing to pay $201.67 per month rent, and more if business improved.

It is significant, as pointed out in respondent's brief, that Mr. Long does not attempt to state the fair rental value of the leased property in the open market, but only its value, or lack of value, to Marine Oil Company. It appears from all of Mr. Long's testimony that he was willing to pay, as shown by his letter of October 18, 1932, $201.67 per month as rent for the said lease property; that prior to September 30, 1933, he was willing to pay $265.00 per month rent. Under date of September 23, 1933, Marine Oil Company had submitted to plaintiff a written proposal to pay $241.00 per month for a one-year lease with privilege of renewal. Mr. Long sought to explain the two last-mentioned offers by saying that prior to September 30, 1933, when the lease

expired, he had acquired a lease of the Standard Oil Company wharf.

One is led to inquire, after a study of all of the evidence, why, if the Adger wharf property had become so valueless to Marine Oil Company before its lease expired, it persisted in holding on to the possession thereof and vigorously resisting the proceedings for ejectment instituted by the Port Utilities Commission?

The Court is satisfied that there is ample evidence that the trial Judge did not abuse his discretion when he held that the verdicts were inadequate, and in granting the motion for new trial.

Judgment affirmed.

MESSRS. JUSTICES CARTER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE BAKER concurs in result.